UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| WILLIAM PETAWAY<br>　　　Plaintiff | |
| VS. | C.A. No. 11-497-ML |
| C/O DUARTE, C/O ADDISON,<br>C/O ALLARD, C/O MANNING,<br>C/O LEDUC, C/O KLAUS,<br>CAPTAIN HEADEN,<br>　　　Defendants | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

Plaintiff William Petaway, an inmate at the Adult Correctional Institutions (the "ACI") in Cranston, Rhode Island, has filed a *pro se* complaint (Doc. #1) seeking declaratory and injunctive relief and damages pursuant to 42 U.S.C. §1983 and related statutes.[1] Before this Court are: (1) a motion to dismiss the complaint, filed by all Defendants (Doc. #6); and (2) Plaintiff's motion to amend or correct his complaint (Doc. #15) in the above-captioned action. For the reasons set forth below, the motion to dismiss is granted, and the motion to amend is denied.

BACKGROUND

In his complaint Plaintiff alleges three separate instances of deprivations of his civil rights: (1) that a false booking was lodged against Plaintiff arising from his involvement in an altercation between a correctional officer and another inmate, and after inadequate notice and hearing, he was placed in 30 days of punitive segregation; (2) that another correctional officer, out of loyalty to the officer involved in the altercation, either lost or stole Plaintiff's head phones and beard trimmer; and (3) that still another correctional officer purposely told other inmates

---

[1] Plaintiff has also filed an application to proceed *in forma pauperis* ("IFP application"). In view of this Court's findings regarding the complaint, the IFP application can be denied as moot. See infra at 12.

1

that Plaintiff was a "snitch," thereby placing him in danger of serious physical injury. The complaint names six ACI Correctional Officers (C/O) as defendants: Correctional Officer Duarte, Correctional Officer Addison, Correctional Officer Allard, Correctional Officer Manning, Correctional Officer Leduc, Correctional Officer Klaus and Captain Heading.[2] All defendants are employees of the Rhode Island Department of Corrections (RIDOC).

Specifically, Plaintiff alleges that he is a Connecticut inmate who was transferred involuntarily to the ACI facility on October 1, 2008. Cmpt. ¶1. Plaintiff asserts that on November 21, 2008, C/O Addison picked a fight with inmate Rose, allegedly because Rose had previously complained about Addison to Captain Heading. Id. ¶¶ 3-18. When Plaintiff intervened in the altercation, another C/O, Leduc, pulled him away and, according to Plaintiff, thereafter filed false disciplinary charges against Plaintiff on the grounds that Plaintiff had attempted to assist Rose, when all Plaintiff did was to try to "break it up." Id. ¶¶ 20, 35-36. Plaintiff further alleges that the 'booking" was not read to him until 48 hours after the incident and that he did not receive a hearing until December 9, 2008, in violation of RIDOC's disciplinary policy. Id. ¶¶ 36-38. Plaintiff states that he was transferred to the Maximum Security segregation unit on November 22, 2008. Id. ¶ 30.[3]

Plaintiff further alleges that C/O Manning, in a show of unity with DOC staff, stole or lost Plaintiff's headphones and beard trimmer. Id. ¶¶ 31-32. He states that he filed a grievance relative to his missing trimmer and headphones, and that in response he was compensated by the Department for "most of the money for property." Id. ¶¶ 33-35. Finally, Plaintiff alleges that

---

[2] The spellings of Defendants' names are taken from their Motion to Dismiss rather than the complaint, as the Defendants are presumed to use correct spellings.

[3] Plaintiff further alleges that later on the day of the altercation the lights were turned out in his unit and that C/O Allard, C/O Klaus and several other corrections officers approached him wearing black gloves to beat him, but he stops short of expressly alleging that he was beaten by those officers. (Cmpt. ¶¶ 27-30.)

from July 2010 through February 2011, C/O Duarte told other inmates that Plaintiff was not prosecuted for his involvement in the November 2008 altercation because he is a "snitch" and that this disclosure "has put [his] safety at risk." Id. ¶¶ 43-44. Plaintiff further complains that video surveillance cameras[4] are not installed in the Maximum Security section of the ACI [presumably to record incidents such as the one described herein]; and that hand-held video cameras were not used to record the incidents of which he complains. Id. ¶¶ 24-25.

Plaintiff seeks declaratory and injunctive relief, requesting that all defendants be terminated from their employment at the ACI for their actions; that this Court order that surveillance cameras be installed in the maximum-security area; and that corrections officers be required to use handheld video cameras when responding to incidents. Id. at 2, Sec. V. Plaintiff also seeks $5,000 in compensatory and $10,000 in punitive damages from each Defendant. Id.

The Defendants filed the instant motion to dismiss the complaint (Doc. #6). Plaintiff has filed a memorandum in support of his objection to the motion (Doc. #9) ("Obj. to Motion').

## DISCUSSION

A. Law Governing Motion to Dismiss

In order to survive a motion to dismiss for failure to state a claim on which relief may be granted pursuant to Fed. R. Civ. P. 12(b)(6), a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009)(quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The Court must accept a plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. See Sanchez v. Pereira-Castillo, 590 F.3d 31, 41 (1st Cir. 2009). Further, the Court is required to review pleadings of a *pro se* plaintiff liberally. See Estelle v.

---

[4] The complaint refers to the cameras as "mod cameras" which the Court takes to mean, in context, fixed surveillance cameras permanently installed in 'B' module (a High Security area) of the prison. (Cmpt. ¶ 24.)

3

Gamble, 429 U.S. 97, 106 (1976). However, the Court need not credit bald assertions or unverifiable conclusions. See Iqbal, 129 S.Ct. at 1949 (a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.")

To establish liability under 42 U.S.C. §1983, a plaintiff must show: (1) the deprivation of a federal right, (2) a causal connection between the actor and the deprivation, and (3) state action. Sanchez, 590 F.3d at 41.

With these principles in mind, this Court considers the motion to dismiss as to each of Plaintiff's claims. In the instant case, there is no dispute that the Defendants acted under color of state law. The question is whether the facts alleged rise to a violation of the plaintiff's constitutional rights and if so, whether the violation was caused by Defendants' actions.

B.  Improper Disciplinary Action

Plaintiff first alleges a violation of his Fourteenth Amendment due process rights as a result of (a) a false booking charging him with assaulting a corrections officer, and (b) the belated notice and hearing on those charges, which resulted in Plaintiff's being placed in punitive segregation. Cmpt. ¶¶ 3-20, 36-39.

The Due Process Clause standing alone confers no liberty interest in freedom from state action taken within the sentence imposed. Sandin v. Conner, 515 U.S. 472, 480 (1995). In order to invoke the protections of the Due Process Clause, a Plaintiff must allege some sort of interference with a protected liberty interest, such as one created by state regulation. Id. at 483-84.

Plaintiff claims that he had a state-created liberty interest in avoiding false disciplinary actions and in receiving adequate notice and a disciplinary hearing pursuant to established prison

policy, and the so-called "Morris Rules." (Obj. to Motion at 4, 7.) While this proposition is debatable,[5] the fact remains that under Sandin any state-created interests are "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484. In Sandin the Supreme Court held that Sandin's punitive segregation for a term of 30 days "did not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Id. at 486. See also Dominique v. Weld, 73 F.3d 1156, 1160 (1st Cir. 1996) (following "the new threshold test articulated in Sandin").

Here, Plaintiff was given 30 days of punitive segregation. Pursuant to Sandin, such a punishment fails to come within the reach of the "atypical and significant" benchmark which would implicate a liberty interest protected by the Fourteenth Amendment. Sandin, 515 U.S. at 484.[6]

---

[5] This Court need not decide whether the policy regulations of RIDOC and/or the Morris rules -- which are state regulations, see Doctor v. Wall, 143 F.Supp.203, 204 (D.R.I. 2001) -- establish a liberty interest on behalf of inmates. But see DiCiantis v. Wall, 795 A.2d 1121, 1126 (R.I. 2002) (finding that there is no constitutional liberty interest in prison disciplinary proceedings under Sandin). Even assuming in Plaintiff's favor that these regulations were not followed, he has not alleged any due process violation under Sandin so as to proceed on this claim in this Court, as discussed herein.

[6] Plaintiff's reliance on Surprenant v. Rivas, 424 F.3d 5 (1st Cir. 2005), is misplaced. In Surprenant, the plaintiff, a pretrial detainee, was falsely accused of assaulting a corrections officer but maintained that he was in a separate room lifting weights at the time of the incident. Id. at 10. Surprenant received no prehearing notice of his charges and was put in segregation under onerous conditions pending a hearing and then, after a summary hearing, was given 30 days punitive segregation without credit for time spent in prehearing segregation. Id. at 10-11. In upholding a verdict finding that the defendant corrections officers violated Surprenant's due process rights, the Court of Appeals expressly noted that in view of plaintiff's status as a pretrial detainee rather than a convicted inmate, the standard under Sandin v. Connor, 515 U.S. 472 (1995), did not apply. Surprenant, 424 F.3d at 17 ("... Sandin's rationale applies only to those convicted of crimes -- not to pretrial detainees").
    Here, the Sandin standard *does* apply to Plaintiff, a convicted inmate. As noted infra, although Plaintiff similarly alleges that Defendant Leduc filed "a fabricated disciplinary report" falsely accusing him of assaulting a corrections officer, Plaintiff, unlike Surprenant, does not deny any involvement in the altercation between Rose and Addison but rather describes his involvement as an attempt to "break it up." (Cmplt. ¶¶ 20-21.) The fact that Leduc's characterization of the incident differed from Plaintiff's -- when considered together with the punishment imposed (30 days segregation) -- simply does not render Leduc's conduct a violation of Plaintiff's liberty interest cognizable under Sandin.

5

Moreover, even assuming that the delayed notice and hearing Plaintiff received incident to the disciplinary action were not constitutionally sufficient, because Plaintiff's short-term punishment did not implicate a protected liberty interest, full procedural safeguards were not constitutionally required. See Moore v. Begones, No. 09-543-S, 2010 WL 27482 at *5 (Jan. 4, 2010) (Report and Recommendation of Hagopian, J., as adopted by Smith, J.) (claim of false disciplinary charges found not to implicate any liberty interest, citing Sandin 515 U.S. at 487).

This Court has reviewed Plaintiff's allegation that Defendant Leduc filed "a fabricated disciplinary report" that he assaulted a corrections officer. However, Plaintiff does not allege that he never became involved in the altercation between Rose and Addison but rather describes his involvement as an attempt to "break it up." (Cmpt. ¶¶ 20-21.) The differing characterizations of Plaintiff's conduct do not require a finding that Leduc's report was fabricated.

Accordingly, since Plaintiff has failed to allege an interference with a liberty interest protected by the Due Process Clause, his claim of improper disciplinary action must be dismissed.

B.   Lost or Confiscated Property

The complaint further alleges that Defendant Manning, "as a show of unity [with] his fellow C/Os, stole or lost" Plaintiff's headphones and beard trimmer." (Cmpt ¶¶ 31-32) Plaintiff states that he filed a grievance with the prison relative to this loss, that his claim was "upheld" and that he "was paid most of the money for property." (Id. ¶ 35.) Plaintiff does not give a dollar value for either item. He claims that in view of Manning's motivation for stealing or losing the items, he is entitled to "full" compensation instead of "most." (Obj. to Motion at 9.)

This claim requires little discussion, as this claim is both undeveloped and *de minimus*. Plaintiff does not provide the date when the property was taken or any dollar value for either

6

item, and he leaves it to this Court to speculate as to whether the property was lost or stolen. In any event, the postdeprivation remedy provided to Plaintiff, pursuant to which he received most of the value of the property, was fully adequate under existing case law. See Lowe v. Scott, 959 F.2d 323, 340 (1st Cir. 1992) ("... if a state provides adequate postdeprivation remedies -- either by statute or through the common-law tort remedies available in its courts -- no claim of a violation of procedural due process can be brought under §1983 against the state officials whose random and unauthorized conduct occasioned the deprivation.") (citing Hudson v. Palmer, 468 U.S. 517, 533 & n.14, and Parratt v. Taylor, 451 U.S. 527, 537, 543-44 (1981)).

Here, it is clear that a suitable postdeprivation remedy existed. As Plaintiff acknowledges, his grievance was sustained, and he was substantially made whole. He fails to indicate any amount of damages or loss that remains after the settlement. In short, there was no improper deprivation here, and certainly not one that rises to a constitutional dimension. Thus, this claim fails.

C. Failure to Protect Claim

Plaintiff further alleges that during a seven-month period ending in February 2011, Defendant Duarte informed other inmates that the reason Plaintiff was not criminally charged for his conduct in the Rose-Addison altercation was because Plaintiff was a "snitch," and that this action by Duarte exposed him to risk from other inmates, in violation of his rights under the Eighth Amendment. Cmpt. ¶¶ 43-44.

"[P]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994). However, "[n]ot every injury suffered by a prisoner at the hands of another results in constitutional liability on the part of prison officials." Burrell v. Hampshire County, 307 F.3d 1, 7-8 (1st Cir. 2002) (citing Farmer, 511 U.S.

at 834). To establish an Eighth Amendment violation, a plaintiff must show: (1) that the deprivation alleged was "objectively, sufficiently serious" and (2) that prison officials possessed a sufficiently culpable state of mind, namely one of 'deliberate indifference' to an inmate's health or safety." Id. at 8 (citing Farmer, 511 U.S. at 833).

"Deliberate indifference" in turn requires a showing that prison officials subjectively were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," and [they] must also draw the inference." Id. (citing Farmer, 511 U.S. at 837). Even if they are aware of the risk, prison officials "cannot be deliberately indifferent if they responded reasonably to the risk, even if the harm ultimately was not avoided." Id. (citing Farmer, 511 U.S. at 844). In the context of a failure to protect claim, "a prison official has sufficient culpable intent if he has knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm." Fournier v. Northern NH Correctional Facility, No. 07-264, 2008 WL 2741117, at *3 (D.N.H. July 10, 2008) (internal quotations omitted).

In this case, although Plaintiff alleges that Duarte's actions in labeling him a snitch place him at risk, the complaint does not allege that he was ever actually assaulted or harmed by anyone, nor does it aver any other facts tending to show a substantial risk of serious harm. Thus, on the face of the complaint, Plaintiff does not state a claim on which relief may be granted.

In his response to the State's motion to dismiss, Plaintiff asserts that "he was subject to threats by several known and unknown inmates at H.S.C. [the High-Security Complex]" and that the "danger [to an inmate of being labeled a snitch] is known by RIDOC ... ." (Obj. to Mot. at 3.) However, Plaintiff does not describe the number or nature of these alleged threats or what harm he suffered as a result. He also states that he was placed "on 'single rec[reational] status'

8

for his safety." (Id.) The latter allegation does not suggest "deliberate indifference" but rather the opposite -- that at least some measures were taken for Plaintiff's safety. See Giroux v. Somerset County, 178 F.3d 28, 32 (1st Cir. 1999) ("Even if prison officials know of a substantial risk to inmate health or safety, ... they 'may be found free from liability if they respond reasonably to the risk.'") (quoting Farmer, 511 U.S. at 844). Thus, this Court finds that the allegations as to this claim fail to state an Eighth Amendment claim.

Plaintiff further contends in his response that no allegation of harm is necessary in order to recover, invoking a decision by the Fourth Circuit, Benefield v. McDowall, 241 F.3d 1267 (4th Cir. 2001). (Obj. to Motion at 2-3.) In Benefield, the court noted that "labeling an inmate a snitch has the potential for great harm and may violate constitutional guarantees" and that an inmate "does not need to wait until he is actually assaulted before obtaining relief." Id. at 1272. See also Harmon v. Berry, 728 F.2d 1407, 1409 (11th Cir.1984) (same).

While it is true, as Plaintiff urges, that an inmate does not have to wait until he suffers an attack to demonstrate an Eighth Amendment violation, he does have to show that serious injury is "sure or very likely" and "sufficiently imminent." Baze v. Rees, 553 U.S. 35, 49-50 (2008) (quoting Helling v. McKinney, 509 U.S. 25, 33-35 (1993)). Accord Kelley v. Wall, No. CA 10-233-ML, 2010 WL 5176172 at *3 (D.R.I. Nov. 30, 2010) (Report and Recommendation by Hagopian, MJ, as adopted by Lisi, J.) (quoting Baze, 553 U.S. at 49-50).

Here, Plaintiff has not sufficiently demonstrated that the alleged labeling of him as a snitch has subjected him to a substantial risk of harm in this case. This Court concludes that the facts pled by Plaintiff on this claim -- even supplemented by the assertions in Plaintiff's objection to the motion to dismiss -- fail to show a substantial risk of serious harm so as to state an Eighth Amendment claim. See Purvis v. Ponte, 929 F.2d 822, 825 (1st Cir.1991) ("'[t]o

establish fear of constitutional dimensions, an inmate must show more than simple anxiety'") (quoting Shrader v. White, 761 F.2d 975, 979 (4th Cir.1985).[7]

Further, Plaintiff has not shown that Defendants acted with 'deliberate indifference' to his safety. As noted supra, Plaintiff's own filings suggest that Defendants took action in response to Plaintiff's allegations by placing him in single recreational status. See Giroux, 178 F.3d at 32. See also Kelley, 2010 WL 5176172 at *3 (recommending denial of claim for injunctive relief based on failure to protect from potentially dangerous cellmates, where Plaintiff *inter alia* declined protective segregation).

For all of these reasons, this Court concludes that the complaint, even as supplemented, fails to state a claim for failure to protect as a result of being labeled a snitch.

D.  Motion to Amend Complaint

After the defendants filed a motion to dismiss, Plaintiff filed a motion to amend his complaint, asserting that this Court should not dismiss the suit but should grant him permission to modify his complaint "to state a claim." (See Motion/Request of the Plaintiff to Amend Complaint to State a Claim [Doc. #15] at 1.)[8] The Government has objected to the motion.

---

[7] In Purvis, which predated Benefield, the First Circuit acknowledged that "a prisoner need not wait to be assaulted to obtain relief" from violence at the hands of other prisoners and that prison officials have a duty under 42 U.S.C. §1983 "to exercise reasonable care to provide reasonable protection from an unreasonable risk of harm." 929 F.2d at 825. The court further noted that "[a]n unreasonable risk of harm is established where a plaintiff shows that there was a strong likelihood that violence would occur." Id. (citations omitted). Nevertheless, the court of appeals upheld the district court's dismissal of the complaint for failure to state a claim, where Purvis's allegations (that as a gay person, he was threatened by cellmates who were hostile to gay prisoners) did not indicate that he was ever subjected to a serious risk of harm from such cellmates. Id. at 825-26.

[8] In support of his motion to amend, Plaintiff's inexplicably relies on Laurence v. Wall, 551 F.3d 92 (1st Cir. 2008). That decision concerned a *pro se* plaintiff's access to the assistance of the United States Marshal's Office in serving the summons and complaint upon defendants. Id. at 53-54. Although the Court of Appeals incidentally noted that the plaintiff had moved to file, and did file, an amended complaint, id. at 93, the court did not address either the basis for the amended complaint or the grounds on which it was permitted to be filed. Thus, Laurence is of no help to Plaintiff.

The motion to amend cannot succeed for two reasons. First, as the Government points out, it does not comply with the requirements of this Court's Local Rules, as Plaintiff has not filed any proposed amended complaint or supporting memorandum, and thus his motion provides no inkling as to the basis or contents of the proposed amended pleading. See D.R.I. LR Cv 15 (requiring that a motion to amend a pleading "be accompanied by (a) the proposed amended pleading; and (b) a supporting memorandum that explains how the amended pleading differs from the original and why the amendment is necessary."); Ruiz Rivera v. Riley, 209 F.3d 24, 28 n. 2 (1st Cir. 2000) ("We have consistently held that a litigant's *pro se* status [does not] absolve him from compliance with [either] the Federal Rules of Civil Procedure [or] a district court's procedural rules.").

To the extent that Plaintiff elsewhere describes his contemplated amendments, they are futile. In his objection to Defendants' motion to dismiss, Plaintiff proposes to amend his complaint by adding the following points or allegations: (1) that "he was subject to threats by several known and unknown inmates at H.S.C. because of [Defendant] Duarte's LIE [labeling him a snitch];" (2) that the danger of being labeled a snitch is known to ACI officials and this Court; and (3) reiterating that no harm need be suffered by Plaintiff for such an allegation to be made. (Obj. to Motion at 3.) However, all of these grounds have been discussed supra by this Court and found to be insufficient, and thus, any proposed amended complaint based on such grounds would be futile. See Foman v. Davis, 371 U.S. 178, 182 (1962) (listing futility of amendment as reason to denial of motion to amend); Feliciano-Hernandez v. Pereira-Castillo, 663 F.3d 527 (1st Cir. 2011) (upholding district court's disallowance of filing amended complaint on grounds of delay and futility). Thus, the motion to amend must be denied.[9]

---

[9] To the extent that Fed. R. Civ. P. 15(a)(1)(B) permitted Plaintiff to amend his pleading "once as a matter of course within ... 21 days after service of a motion under rule 12(b)," Plaintiff's motion to amend

11

This Court has considered all of Plaintiff's other arguments in support of the claims made in his complaint and finds them to be without merit.[10] None of the allegations in Plaintiff's complaint state a claim of constitutional dimension or a claim on which relief may otherwise be granted.

## CONCLUSION

Based on the foregoing considerations, the Defendants' Motion to Dismiss the complaint is hereby GRANTED. In addition, for the reasons expressed herein, Plaintiff's motion to amend his Complaint is hereby DENIED. Plaintiff's IFP application is hereby DENIED as moot.

SO ORDERED:


*/s/ Mary M. Lisi*
Mary M. Lisi
Chief United States District Judge

May 22, 2012

---

-- mailed on February 3, 2011, some 40 days after service of the instant motion to dismiss -- was untimely. Even if the statements concerning an amended complaint contained in Plaintiff's objection to the motion to dismiss (which objection was filed 21 days after that motion) were somehow construed to constitute a motion to amend, they fail for the reasons noted above.

[10] Plaintiff's claims concerning corrections officials' non-use of either fixed or hand-held video surveillance cameras to record prison disturbances or incidents (Cmpt. at 3, Sect. V and ¶¶ 24-25) are likewise dismissed. There is no constitutional requirement that such cameras be used, and the use or non-use of such equipment is within the discretion of correction officials. See Sandin, 515 U.S. 482-83 (noting view that "federal courts ought to afford appropriate deference and flexibility to state officials trying to manage a volatile environment") (citing Wolff v. McDonnell, 418 U.S. 539, 561-563 (1974)) (further citations omitted).